UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRUSTEES OF THE NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS PENSION FUND, WELFARE FUND, ANNUITY FUND, and APPRENTICESHIP, JOURNEYMAN RETRAINING, EDUCATIONAL AND INDUSTRY FUND, TRUSTEES OF THE NEW YORK CITY CARPENTERS RELIEF AND CHARITY FUND, and THE NEW YORK CITY AND VICINITY CARPENTERS LABOR-MANAGEMENT CORPORATION, <br><br> Plaintiffs, <br><br> -against- <br><br> RICHIE JORDAN CONSTRUCTION, INC., CJ CONTRACTORS NJ INC, RICHARD JORDAN, and R & K JORDAN REALTY LLC, <br><br> Defendants. | No. 16 CV 6423 <br><br> **COMPLAINT** |

Plaintiffs, by and through their attorneys, Virginia & Ambinder, LLP, as and for their Complaint, respectfully allege as follows:

## NATURE OF THE ACTION

1. This is a civil action under Sections 404, 409, 502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1104, 1109, 1132 and 1145, and Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. § 185, to collect delinquent employer contributions to a group of employee benefit plans and for related relief. Additionally this is an action to recover fraudulently conveyed assets in violation of New York's Debtor & Creditor Law ("DCL") §§ 270 *et seq*.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367, and 29 U.S.C. §§ 185 and 1132(e)(1).

3. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as this matter involves citizens of different states and as the matter in controversy exceeds the sum of $75,000 exclusive of interest and costs.

4. Venue is proper in this Court pursuant to 29 U.S.C. § 1132(e)(2) because the ERISA Funds (as defined below) are administered in this district.

## THE PARTIES

5. Plaintiffs Trustees of the New York City District Council of Carpenters Pension, Welfare, and Annuity, Apprenticeship, Journeyman Retraining, Educational and Industry Funds (the "ERISA Funds") are employer and employee trustees of multiemployer labor-management trust funds organized and operated in accordance with ERISA. The ERISA Funds are organized and operated in accordance with Section 302(c) of the LMRA, 29 U.S.C. § 186(c), and are employee benefit plans within the meaning of Section 3(3) of ERISA, 29 U.S.C. §1002(3). The Trustees are fiduciaries of the ERISA Funds within the meaning of Section 3(21) of ERISA, 29 U.S.C. § 1002(21). The ERISA Funds maintain their principal place of business at 395 Hudson Street, New York, New York 10014.

6. Plaintiffs Trustees of the New York City District Council of Carpenters Relief and Charity Fund (the "Charity Fund") are Trustees of a charitable organization established under Section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3). The Charity Fund maintains its principal place of business at 395 Hudson Street, New York, New York 10014.

7. Plaintiff New York City and Vicinity Carpenters Labor-Management Corporation (together, with the Charity Fund and the ERISA Funds, as the "Funds") is a New York not-for-profit corporation organized and operated in accordance with Section 302(c)(9) of the LMRA, 29 U.S.C. § 186(c)(9), that maintains its principal place of business at 395 Hudson Street, New York, New York 10014.

8. Richie Jordan Construction, Inc. ("RJC") is a New Jersey based corporation with its principal place of business located at 115 North County Line Road, Jackson, New Jersey 08527.

9. CJ Contractors NJ Inc. ("CJ") is a New Jersey based corporation with its principal place of business located at 115 North County Line Road, Jackson, New Jersey 08527.

10. R & K Jordan Realty LLC ("R&K") is a New Jersey based corporation with its principal place of business located at 27 Bridgewater Court, Jackson, New Jersey 08527.

11. Richard Jordan is the president and owner of RJC, CJ, and R&K, and a resident of the state of New Jersey.

**FACTS**

**RJC Was Bound To A Collective Bargaining Agreement**

12. At relevant times, RJC was a party to, or manifested an intention to be bound by, a collective bargaining agreement (the "CBA") with the New York City District Council Carpenters f/k/a District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America (the "Union").

13. The CBA required RJC to make periodic contributions to the Funds for work performed within the trade and geographical jurisdiction of the Union ("Covered Work").

14. The CBA also required RJC to furnish all pertinent books and payroll records, including cash disbursement records, when requested by the Funds for the purpose of conducting an audit to ensure compliance with required benefit fund contributions.

**The Funds Receive A Judgment Against RJC And The Subsequent Audit Of RJC**

15. In or around October 2014, the Funds learned that RJC had failed to remit all required contributions.

16. The matter was submitted to arbitration pursuant to the CBA and, on January 26, 2015, the arbitrator issued an award in favor of the Funds.

17. On May 18, 2015, the Funds filed a petition to confirm the arbitration award.

18. On November 17, 2015, the court entered judgment in favor of the Funds and against RJC in the total amount of $103,486.58 (the "Judgment").

19. No portion of this Judgment has been paid or otherwise satisfied.

20. In 2016, the Funds attempted to conduct an audit of RJC covering the period January 23, 2014 through March 31, 2015 (the "Audit").

21. During the Audit, RJC provided its payroll records. However, it did not proved the Funds' auditors with all of its pertinent books and records, such as its W-2s, general ledgers, cash disbursement records, and bank account records.

22. Based on the partially-submitted documents, the Audit revealed that RJC failed to remit principal contributions in the amount of $100,104.84.

**Alter Ego, Successor, And Single Employer Allegations**

23. At relevant times, RJC and CJ were alter egos of, successors of, and single employers with each other, and they had substantially identical management, business purpose,

operation, equipment, customers, supervision, and ownership and these entities had interrelated and interdependent operations and a centralized control of labor functions.

24. RJC and CJ were engaged in the same type of work, with both companies performing carpentry work, construction work, and other Covered Work within the meaning of the CBA.

25. RJC and CJ both operated out of the same office at 115 North County Line Road, Jackson, New Jersey 08527.

26. RJC and CJ both shared the same telephone number: 732-370-8962.

27. Richard Jordan is the president and effective owner of both RJC and CJ.

28. RJC and CJ used the same equipment, vehicles, facilities, and office staff.

29. RJC and CJ would routinely transfer money between each other when necessary to meet each other's operational needs and expenses and without consideration exchanged for these transfers.

30. RJC and CJ failed to follow ordinary corporate formalities or keep separate records, and there was never an arm's-length relationship between them.

31. RJC used CJ for the purpose of avoiding B&L's contractual and statutory obligations to the Funds by having CJ perform Covered Work without conforming to the terms of the CBA.

32. RJC created or maintained CJ in order to perpetrate a fraud against the Funds and avoid its obligations to the Funds under the CBA.

33. As the alter ego of, successor of, and single employer with RJC, CJ is subject to the terms of RJC's CBA, and each is liable for each other's debts and unpaid contributions to the Funds.

**Breach Of Fiduciary Duty Allegations**

34. The CBA bound RJC to the terms of the Funds' Trust Agreement and Collection Policy, which provide that the Funds' assets include not only money that employers have actually contributed to the Funds, but also delinquent amounts that employers were required to contribute to the Funds pursuant to the CBA.

35. Section 3(21)(A)(i) of ERISA, 29 U.S.C. § 1002(21)(A)(i), provides that a person is a fiduciary of an employee benefit plan to the extent he or she exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets.

36. Richard Jordan exercised operational control over some or all of RJC's and CJ's assets, including their bank accounts, contracts, equipment, and other assets.

37. Richard Jordan was responsible for deciding whether to use assets in RJC's and CJ's possession to pay contributions to the Funds and he exercised discretionary control and discretionary authority over the disposition of the Funds' assets by, among other things, causing RJC and CJ to fail to make contributions to the Funds in accordance with the CBA.

38. While RJC and CJ owed contributions to the Funds, Richard Jordan caused RJC and CJ to use, divert, or expend their assets for purposes other than making contributions to the Funds.

39. Richard Jordan is a fiduciary of the Funds within the meaning of Section 3(21)(A)(i) of ERISA, 29 U.S.C. § 1002(21)(A)(i).

40. Richard Jordan is a party in interest with respect to the Funds within the meaning of Sections 3(14)(A), (C), (E), and/or (H) of ERISA, 29 U.S.C. §§ 1002(14)(A), (C), (E), and/or (H).

41. By the foregoing acts and omissions, Richard Jordan failed to discharge his duties with respect to the Funds solely in the interest of the participants and beneficiaries of the Funds and for the exclusive purposes of providing benefits to the Funds' participants and their beneficiaries, in violation of Section 404(a)(1)(A) of ERISA, 29 U.S.C. § 1104(a)(1)(A).

42. By the foregoing acts and omissions, Richard Jordan failed to discharge his duties with respect to the Funds with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity would use in the conduct of an enterprise of a like character and with like aims, in violation of Section 404(a)(1)(B) of ERISA, 29 U.S.C. § 1104(a)(1)(B).

43. By the foregoing acts and omissions, Richard Jordan caused assets of the Funds to be used by or for the benefit of a party in interest, in violation of Section 406(a)(1)(D) of ERISA, 29 U.S.C. § 1106(a)(1)(D).

44. By the foregoing acts and omissions, Richard Jordan caused the Funds to suffer substantial monetary losses.

45. Under Section 409(a) of ERISA, 29 U.S.C. § 1109(a), Richard Jordan is personally liable to the Funds for all such losses, plus all profits Richard Jordan has made and/or all earnings the Funds have lost as a result of such acts and omissions.

**Fraudulent Conveyance Allegations**

46. Within a week of the Judgment being entered, Richard Jordan fraudulently transferred two properties to R&K, a company solely owned by Richard Jordan and his wife, Kelly Jordan.

47. Through a deed dated November 24, 2015, Richard Jordan transferred his interest in the property located at 24 Forge Court, Unit 66, Building 12, Jackson, New Jersey 08527 to R&K for one dollar.

48. Similarly, through another deed dated November 24, 2015, Richard Jordan and his wife transferred their interests in the property located at 115 North County Line Road, Jackson, New Jersey 08527, to R&K for one dollar.

49. Richard Jordan, aware of the Judgment, RJC's unpaid contributions still accruing, and his liability to the same for his breach of fiduciary duty to the Funds, made the above-referenced transfers without consideration and with the intent to hinder, delay, and defraud the Funds' attempts to collect on the Judgment and to recover RJC's unpaid contributions due and owing at that time.

**THE FUNDS' FIRST CLAIM FOR RELIEF AGAINST RJC AND CJ**
**(Alter Ego Liability/Liability for Delinquent Contributions/Violation of the CBA)**

50. The Funds repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

51. Section 515 of ERISA provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145.

52. Section 301 of the LMRA, 29 U.S.C. § 185, authorizes the Funds, as third-party beneficiaries to the CBA, to file a federal lawsuit regarding an employer's violation of that CBA.

53. At relevant times, RJC was a party to, or manifested an intent to be bound by, the CBA.

54. The CBA and the documents and instruments governing the Funds required RJC to make specified hourly contributions to the Funds in connection with all Covered Work performed and to submit to and comply with periodic payroll audits when requested by the Funds.

55. At relevant times, RJC and CJ were alter egos of, successors of, and single employers with each other and had substantially identical management, business purpose, operations, equipment, customers, supervision, and ownership.

56. By virtue of their status as alter egos, successors, and/or a single employer, RJC and CJ are and have at all relevant times been bound by the CBA and are jointly and severally liable for each other's obligations thereunder.

57. By virtue of their status as alter egos, successors, and/or a single employer, RJC and CJ are jointly and severally liable for the Judgment.

58. By virtue of their status as alter egos, successors, and/or a single employer, RJC and CJ are jointly and severally liable for the amounts found to be due and owing pursuant to the Audit.

59. Pursuant to Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145, Section 301 of the LMRA, 29 U.S.C. § 185, the CBA, the Collection Policy, and the documents and instruments governing the Funds, the Funds are entitled to an order finding that: (1) RJC and CJ are alter egos, successors, and/or a single employer; (2) RJC and CJ are both jointly and severally liable for the Judgment; (3) RJC and CJ are both jointly and severally liable for the delinquencies revealed by the Audit and associated liquidated damages, interest, attorneys' fees, and costs associated with the audit; (4) RJC and CJ are jointly and severally liable for all other amounts found to be due and owing to the Funds during the course of this litigation; (5) RJC and CJ are jointly and severally liable for all attorneys' fees and costs incurred by the Funds in this action.

## THE FUNDS' SECOND CLAIM FOR RELIEF AGAINST RJC
**(Violation of the CBA/Failure to Permit an Audit)**

60. The Funds repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

61. Section 301 of the LMRA, 29 U.S.C. § 185, authorizes the Funds, as third-party beneficiaries to the CBA, to file a federal lawsuit regarding an employer's violation of that CBA.

62. At relevant times, RJC was a party to, or manifested an intent to be bound by, the CBA.

63. The CBA required RJC to furnish all pertinent books and payroll records, including cash disbursement records, when requested by the Funds for the purpose of conducting an audit to ensure compliance with required benefit fund contributions.

64. RJC violated the terms of the CBA when it failed to provide the Funds' auditors with all pertinent books and records requested by the auditors.

65. Pursuant to Section 301 of the LMRA, 29 U.S.C. § 185, the CBA, the Collection Policy, and the documents and instruments governing the Funds, the Funds are entitled to an order directing RJC to: (1) submit to an audit of its books and records covering the period January 23, 2014 through March 31, 2015; (2) produce all pertinent books and records requested by the Funds' auditors, including its W-2s, general ledgers, cash disbursement records, and bank account records; (3) pay all delinquent contributions and other associated liquidated damages, interest, fees, and costs revealed by such an audit; and (4) pay all attorneys' fees and costs incurred by the Funds in this action.

## THE FUNDS' THIRD CLAIM FOR RELIEF AGAINST RICHARD JORDAN
**(Breach of Fiduciary Duty)**

66. The Funds repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

67. Pursuant to the documents and instruments governing the Funds, the Funds' assets include delinquent amounts that RJC and CJ have not contributed but are required to contribute to the Funds pursuant to the CBA.

68. Richard Jordan is a fiduciary of the Funds within the meaning of Section 3(21)(A)(i) of ERISA, 29 U.S.C. § 1002(21)(A)(i).

69. Richard Jordan is a party in interest with respect to the Funds, within the meaning of Sections 3(14)(A), (C), (E), and/or (H) of ERISA, 29 U.S.C. §§ 1002(14)(A), (C), (E), and/or (H).

70. Richard Jordan is and was responsible for the failure of RJC and CJ to remit required contributions to the Funds.

71. Richard Jordan breached his fiduciary duties under Section 404 of ERISA, 29 U.S.C. § 1104, by, among other things, failing to discharge his duties with respect to the Funds solely in the interest of the participants and beneficiaries of the Funds and/or with the care, skill, prudence, and diligence required under the circumstances.

72. Richard Jordan breached his fiduciary duties under Section 406, 29 U.S.C. § 1106, of ERISA by, among other things, causing assets of the Funds to be used by or for the benefit of a party in interest.

73. Accordingly, pursuant to Section 409(a) of ERISA, 29 U.S.C. § 1109(a), Richard Jordan is personally liable to the Funds for: (1) all losses incurred by the Funds as a result of Richard Jordan's breach of fiduciary duties, in an amount to be determined at trial; and (2) all

profits Richard Jordan has made and/or all earnings the Funds have lost as a result of Richard Jordan's unlawful acts and omissions, in an amount to be determined at trial.

**THE FUNDS' FOURTH CLAIM FOR RELIEF AGAINST**
**RICHARD JORDAN AND R&K**
**(Fraudulent Conveyances Under DCL §§ 276 and 276-a)**

74. The Funds repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

75. Under DCL § 276, "[e]very conveyance made . . . with actual intent . . . to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

76. Where a debtor's conveyance is set aside due to a finding that it was made with the actual intent to hinder, delay, or defraud a present or future creditor, DCL § 276-a authorizes the recovery of the creditors' attorneys' fees incurred in bringing the action.

77. As referenced above, Richard Jordan, while aware of the Judgment, RJC's unpaid contributions still accruing, and his liability to the same for his breach of fiduciary duty to the Funds, fraudulently conveyed his interest in certain properties to R&K without consideration and with the intent to hinder, delay, and defraud the Funds' attempts to collect on the Judgment and to recover RJC's unpaid contributions due and owing at that time.

78. Pursuant to DCL §§ 276 and 276-a, the Funds are entitled to, among other things, any money found to be fraudulently conveyed from Richard Jordan to R&K, and for any reasonable attorneys' fees incurred in bringing this action.

**WHEREFORE,** the Funds respectfully request that this Court:

(1) Issue an order on the Funds' First Claim for Relief, finding that: (1) RJC and CJ are alter egos, successors, and/or a single employer; (2) RJC and CJ are both jointly

and severally liable for the Judgment; (3) RJC and CJ are both jointly and severally liable for the delinquencies revealed by the Audit; (4) RJC and CJ are jointly and severally liable for all other amounts found to be due and owing to the Funds during the course of this litigation; and (5) RJC and CJ are jointly and severally liable for all attorneys' fees and costs incurred by the Funds in this action;

(2) Issue on order on the Funds' Second Claim for Relief, directing RJC to (1) submit to an audit of their books and records covering the period January 23, 2014 through March 31, 2015; (2) produce all pertinent books and records requested by the Funds' auditors, including its W-2s, general ledgers, cash disbursement records, and bank account records; (3) pay all delinquent contributions and other associated liquidated damages, interest, fees, and costs revealed by such an audit; and (4) pay all attorneys' fees and costs incurred by the Funds in this action;

(3) Issue an order on the Funds' Third Claim for Relief, finding that Richard Jordan breached his fiduciary duty to the Funds and finding that his is liable to the Funds for: (1) all losses incurred by the Funds as a result of Richard Jordan's breach of fiduciary duties, in an amount to be determined at trial; and (2) all profits Richard Jordan has made and/or all earnings the Funds have lost as a result of Richard Jordan's unlawful acts and omissions, in an amount to be determined at trial;

(4) Issue an order on the Funds' Fourth Claim for Relief: (1) finding that Richard Jordan fraudulent conveyed property to R&K in violation of the DCL; (2) vacating, modifying, or otherwise setting aside any conveyances found to be fraudulent; (3) requiring R&K to turn over to the Funds any fraudulently conveyed money or property in its custody or possession; (4) disregarding the fraudulent conveyances

and attaching or levying execution upon the money or property; and (5) awarding reasonable attorneys' fees to the Funds. Additionally, the Funds are entitled to a personal monetary judgment against R&K in the amount of any money or assets that were fraudulently conveyed to R&K by Richard Jordan that cannot be set aside or turned over to the Funds; and

(5) Award the Funds such other and further relief as the Court may deem just and proper.

Dated: New York, New York
August 12, 2016

Respectfully submitted,

**VIRGINIA & AMBINDER, LLP**

By:  /s/
Todd Dickerson
40 Broad Street, 7th Floor
New York, New York 10004
(212) 943-9080
*Attorneys for Plaintiffs*